UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LAWRENCE FLACK,

Civil Action No. 25-10752

Plaintiff,

Brandy R. McMillion
United States District Judge

v.

P. HERNANDEZ, *et al.*,

David R. Grand
United States Magistrate Judge

Defendants.

_____/

## REPORT AND RECOMMENDATION TO DENY WITHOUT PREJUDICE DEFENDANTS' MOTION TO DISMISS AND FOR SUMMARY JUDGMENT (ECF No. 12)

*Pro se* plaintiff Lawrence Flack ("Flack"), an inmate incarcerated at the Loretto Federal Correctional Institution ("Loretto"), brings this action under the Federal Tort Claims Act ("FTCA") against the United States ("Defendant"),[1] claiming the Defendant "failed to give [him] adequate attention to his serious medical needs." (ECF No. 1).[2] More specifically, Flack appears to allege that due to the care he did and did not receive, he developed a large tumor in his bladder which led to him having to undergo additional

_____

[1] In his complaint, Flack had also asserted *Bivens* claims against a slew of individual defendants. However, in his response brief, Flack indicated his desire to withdraw those claims and proceed in this action solely with his FTCA claim against the United States. (ECF No. 27, PageID.252, 254) ("Plaintiff, at this point in time, promulgates to all parties, and this Court, that he is no longer seeking a Bivens remedy in this matter. Only the Federal Tort Claim against the United States as the Defendant, will be persued [sic]. * * * [T]he Court should allow Plaintiff to withdraw his Bivens Claim and pursue his Federal Tort Claim against the United States."). Accordingly, Flack's *Bivens* claims against the individual defendants should be dismissed.

[2] The case was referred to the undersigned for all pretrial matters pursuant to 28 U.S.C. § 636(b). (ECF No. 13).

surgeries, his bladder being removed, the loss of his prostate, and the development of a "hydrocele."   (*Id.*, PageID.22-26).   He also contends that he suffered verbal abuse following one of those surgeries.  (*Id.*, PageID.26).

On August 19, 2025, Defendant filed a Motion to Dismiss and for Summary Judgment.  (ECF No. 12).  Flack filed his Response on January 6, 2026 (ECF No. 27), and Defendant filed its reply on January 29, 2026 (ECF No. 30).[3]

Generally, the Court will not hold a hearing on a motion in a civil case in which a party is in custody, *see* E.D. Mich. LR 7.1(f), and it declines to order a hearing at this time.

## I.      RECOMMENDATION

For the reasons set forth below, **IT IS RECOMMENDED** that Flack's *Bivens* claims be **DISMISSED**, Flack be **ORDERED** to file an amended complaint within 30 days, and Defendant's Motion to Dismiss and for Summary Judgment **(ECF No. 12)** be

---

[3] On February 10, 2026, Flack filed what was docketed as a "Motion for Abeyance for all Dispositive Adjudications," in which Flack merely writes that he has sent Defendant's counsel's a Rule 11 "Safe Harbor" copy of a "Motion to Sanction Government," and asks that "any and all dispositive adjudications be held in ABEYANCE until this very important matter is resolved." (ECF No. 31).  However, Flack provides no details as to why he believes sanctions are warranted, or how any such matters impact the Court's ability to fairly decide Defendant's pending dispositive motion.  Accordingly, **IT IS ORDERED** that Flack's motion **(ECF No. 31)** is **DENIED**.

On February 18, 2026, without seeking or obtaining leave of Court, Flack filed a "Sur-Response to Defendants' Reply."  (ECF No. 32).  While the Court could strike this filing as it is an unauthorized sur-reply, in light of Flack's *pro se* status and the issues discussed below with respect to Defendant's motion, the Court will consider it.  Flack is cautioned, however, that he must abide by all procedural rules that govern this case, and the Court may strike future noncompliant filings.

**DENIED WITHOUT PREJUDICE**.

## II.     REPORT

### A.        Factual Background

In his complaint and subsequent filings, Flack details his medical treatment, or lack thereof, beginning in October of 2021 while he was housed in FDC Milan and FCI Loretto.[4] (ECF No. 1, PageID.23-25).  In October of 2021, while housed at FDC Milan, Flack noticed a "blood/clot" during a "bowel movement."  (ECF No. 1, PageID.3, 23; ECF No. 12, PageID.127).  Flack explains that "[v]arious tests were requested without follow-through, tests were cancelled without recollection, Request to Staff messages were ignored, nearly 10 months had passed before any medication was administered with no explanation as to why…"  (ECF No. 27, PageID.240-41).  In November of 2022, Flack was transferred to FCI Loretto.  (ECF No. 1, PageID.25; ECF No. 12, PageID.127).  Falck alleges that at FCI Loretto "[t]here was a scheduling error with a Consultation Request for a CT Scan that caused an extra 2-month delay in the diagnosis."  (ECF No. 27, PageID.241; *see also* ECF No. 1, PageID.25).  The CT scan was performed on February 10, 2023, and on February 28, 2023, Flack had a cystoscopy, which revealed a large tumor in his bladder.  (*Id.*).  On September 6, 2023, Flack had cystoprostatectomy surgery to address the tumor and, while recovering, Flack says he was "verbally abused for absolutely no justifiable reason at all."  (ECF No. 1, PageID.25).  Finally, Flack alleges that on July 18, 2024, he found out "that he has a hydrocele and is uncertain whether it was caused by any of the previous surgeries."

---

[4] Flack corrects the Defendant that he was housed at *FDC* Milan, not *FCI* Milan.  (ECF No. 27, PageID.239-40).

(*Id.*, PageID.26).

There appears to be no dispute that while Flack was at FDC Milan he did not file any grievances related to the medical care he received there.  There also appears to be no dispute that the first grievance Flack filed about the medical care he received from the Federal Bureau of Prisons ("BOP") was on July 22, 2024.[5]

Defendant now moves for summary judgment, arguing that Flack failed to timely and properly exhaust his FTCA claim.  In short, Defendant argues that Flack was required to file a "formal complaint (BP-9) with the warden within 20 days of the date on which the basis of the complaint occurred," and that because "Flack's initial [BP-9] was submitted in FCI Loretto on July 22, 2024, but the most recent issue complained in that grievance was on September 9, 2023 – over ten and a half months prior, [it was] well past the 20-day time limit."  (ECF No. 12, PageID.145-46).  Defendant also argues that Flack's BP-9 "was not properly appealed through the General Counsel's office."  (*Id.*, PageID.147).

In his response brief, Flack provided some additional factual details about his claim, but he failed to meaningfully address Defendant's exhaustion arguments, writing instead that "there's more to be revealed, but since Plaintiff had to act expeditiously due to the unusual deadline, he must terminate this Response shortly."  (ECF No. 27, PageID.253).

In its reply brief, Defendant noted it did its "best to decipher Plaintiff's allegations, but it appears that [Flack] includes additional facts in his response brief that were not pled in the Complaint.  If this matter continues as an FTCA case, [Flack] should be directed to

---

[5] Flack filed two grievances around this time, and they are discussed in detail below.  *See infra* at 11-12.

file an amended complaint, clearly setting forth the factual allegations underlying his FTCA claim, so that the United States can properly respond." (ECF No. 30, PageID.410). Defendant also noted that Flack failed to address its exhaustion arguments. (*Id.*).

Flack then filed a sur-reply (without seeking or obtaining leave) that, while addressing exhaustion issues, focused largely on the alleged "unavailability" of the exhaustion process – an issue Flack did raise in his complaint (ECF No. 1, PageID.29) – and did not specifically address the timeliness issue. (ECF No. 32).

**B.        Standard of Review**

### 1.        *Motion for Summary Judgment*

Pursuant to Rule 56, the Court will grant summary judgment if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Pittman v. Cuyahoga Cty. Dep't of Children & Family Servs.*, 640 F.3d 716, 723 (6th Cir. 2011). A fact is material if it might affect the outcome of the case under governing law. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In determining whether a genuine issue of material fact exists, the Court assumes the truth of the non-moving party's evidence and construes all reasonable inferences from that evidence in the light most favorable to the non-moving party. *See Ciminillo v. Streicher*, 434 F.3d 461, 464 (6th Cir. 2006).

The party seeking summary judgment bears the initial burden of informing the Court of the basis for its motion and must identify particular portions of the record that demonstrate the absence of a genuine dispute as to any material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986); *Alexander v. CareSource*, 576 F.3d 551, 558 (6th Cir.

2009). As it applies to the affirmative defense of exhaustion, the defense must show that there is "no genuine dispute of material fact that the plaintiff failed to exhaust" an available administrative remedy. *Does 8-10 v. Snyder*, 945 F.3d 951, 961 (6th Cir. 2019). "Once the moving party satisfies its burden, 'the burden shifts to the nonmoving party to set forth specific facts showing a triable issue.'" *Wrench LLC v. Taco Bell Corp.*, 256 F.3d 446, 453 (6th Cir. 2001) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)). In response to a summary judgment motion, the opposing party may not rest on its pleadings, nor "rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact but must make an affirmative showing with proper evidence in order to defeat the motion." *Alexander*, 576 F.3d at 558 (internal quotations omitted).

**C.      Analysis**

> **1.      *Defendant Has Not Shown It Is Entitled to Summary Judgment at This Time***

>> **a.      *The PLRA's Exhaustion Requirement***

Under the Prison Litigation Reform Act ("PLRA"), a prisoner may not bring an action, "under [§ 1983] or any other Federal law," with respect to prison conditions until all available administrative remedies have been exhausted. 42 U.S.C. § 1997e(a); *Woodford v. Ngo*, 548 U.S. 81, 85 (2006). This "exhaustion" requirement serves two main purposes: it promotes efficiency by encouraging the resolution of claims at the agency level before litigation is commenced, and it protects administrative authority by allowing the agency an opportunity to correct its own mistakes before being hauled into federal court. *See Woodford*, 548 U.S. at 89. The Supreme Court has held that this "exhaustion

6

requirement requires proper exhaustion." *Id.* at 93.   Proper exhaustion requires "compliance with an agency's deadlines and other critical procedural rules." *Id.* at 90. Failure to exhaust is an affirmative defense that must be raised by a defendant, and on which the defendant bears the burden of proof. *See Jones v. Bock*, 549 U.S. 199, 216 (2007); *Vandiver v. Corr. Med. Servs., Inc.*, 326 F. App'x 885, 888 (6th Cir. 2009). Exhaustion, however, applies only to remedies that are "available." *Ross v. Blake,* 578 U.S. 632, 642 (2016); Prison Litigation Reform Act of 1995, § 101(a).   An inmate "must exhaust available remedies but need not exhaust unavailable ones." *Id.*

The PLRA attempts to eliminate unwarranted federal court interference with the administration of prisons and thus seeks to "affor[d] corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case." *Porter v. Nussle*, 534 U.S. 516, 525 (2002).   The PLRA also was intended to "reduce the quantity and improve the quality of prisoner suits[.]" *Id.* at 524.   Thus, it is essential for a plaintiff to properly exhaust his administrative remedies before filing suit by filing a grievance that complies with the prison grievance system's requirements regarding the allegations made in his complaint.

An untimely or otherwise improperly filed grievance, even though appealed through all steps of a grievance procedure, does not fulfill the exhaustion requirement of 42 U.S.C. § 1997e(a). *See Northington v. Abdellatif*, No. 16-12931, 2019 WL 9406499, at *7 (E.D. Mich. Aug. 16, 2019) ("The exhaustion requirement is mandatory and requires a prisoner to comply with state procedural rules such as time limits for filing grievances and other critical procedural rules.").   Permitting an untimely or otherwise improperly filed

grievance, even though appealed through all steps, to satisfy § 1997e(a)'s requirement "would permit a prisoner to bypass deliberately and flagrantly administrative review without any risk of sanction." *Woodford*, 548 U.S. at 97. The *Woodford* court explained:

> A prisoner who does not want to participate in the prison grievance system will have little incentive to comply with the system's procedural rules unless noncompliance carries a sanction…. For example, a prisoner wishing to bypass available administrative remedies could simply file a late grievance without providing any reason for failing to file on time. If the prison then rejects the grievance as untimely, the prisoner could proceed directly to federal court. And acceptance of the late grievance would not thwart the prisoner's wish to bypass the administrative process; the prisoner could easily achieve this by violating other procedural rules until the prison administration has no alternative but to dismiss the grievance on procedural grounds. We are confident that the PLRA did not create such a toothless scheme.

*Id.* at 95.  "The level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." *Jones*, 549 U.S. at 218.

### b.      *The Bureau of Prison's Exhaustion Procedures*

In determining whether a plaintiff has properly exhausted his claim, the only relevant rules "are defined not by the PLRA, but by the prison grievance process itself." *Id.* at 200.  In this case, the Bureau of Prison's ("BOP") exhaustion requirements govern. The BOP utilizes an Administrative Remedy Program, which has four stages that must be completed to fully exhaust the claim.  Under 28 C.F.R. § 542.13, "an inmate shall first present an issue of concern informally to staff; and staff shall attempt to informally resolve the issue before an inmate submits a Request for Administrative Remedy."  "The deadline

for completion of informal resolution and submission of a formal written Administrative Remedy Request, on the appropriate form (BP-9), is 20 calendar days following the date on which the basis for the Report occurred." *Id*., § 542.14(a).  The Warden has 20 days to respond.  *Id.*  "An inmate who is not satisfied with the Warden's response may submit an Appeal on the appropriate form (BP-10) to the appropriate Regional Director within 20 calendar days of the date the Warden signed the response." *Id.*, § 542.15(a).  The Regional Director has 30 days to respond.  *Id.*, § 542.18.  "An inmate who is not satisfied with the Regional Director's response may submit an Appeal on the appropriate form (BP-11) to the General Counsel within 30 calendar days of the date the Regional Director signed the response.  When the inmate demonstrates a valid reason for delay, these time limits may be extended." *Id*., § 542.15(a).  General Counsel has 40 days to respond.  *Id.*, § 542.18.

### c.    *Issues Remain that Prevent the Court from Granting Summary Judgment in Defendant's Favor at this Time*

The Defendant argues that it is entitled to summary judgment on Flack's FTCA claim against it because he failed to timely and properly exhaust his administrative remedies.  (ECF No. 12).  However, issues remain that prevent the Court from granting summary judgment in Defendant's favor at this time.  As discussed below, the specific contours of Flack's FTCA claim are not sufficiently defined in his complaint, and, perhaps as a result, Defendant's summary judgment motion appears to conflate exhaustion issues with statute of limitations and claim accrual issues.  These matters are best addressed by permitting Flack to file an amended complaint that clearly identifies the contours of his FTCA claim, and then permitting Defendant, if it so desires, to file a renewed summary

judgment motion tailored to that amended complaint.

To exhaust administrative remedies according to the BOP guidelines, "[t]he deadline for completion of informal resolution and submission of a formal written Administrative Remedy Request, on the appropriate form (BP-9), is 20 calendar days following the date on which the basis for the Request occurred." 28 C.F.R. § 542.14(a). Defendant's exhaustion argument is essentially that Flack missed that deadline by a year or more:

> Flack's initial medical remedy request was submitted in FCI Loretto on July 22, 2024, but the most recent issue complained [of] in that grievance was on September 9, 2023 – over ten and a half months prior, and well past the 20-day time limit. His allegations in this lawsuit date back to October 2021. If Flack believed that the medical treatment that he was receiving at FCI Milan during that timeframe was problematic, he was required to grieve the issue then. If he had, the medical providers at FCI Milan could have addressed his concerns in real-time, which is exactly the purpose of the PLRA's exhaustion requirement. In fact, BOP's grievance tracking system indicates that Flack did not file a single grievance when he was housed at FCI Milan. (*Id.* ¶ 10). BOP tracks inmate grievances with a system called SENTRY. (Id. ¶ 7). Flack's SENTRY printout and the medical grievances he filed are attached to Exhibit 1.
>
> The grievance that he submitted at FCI Loretto in July 2024 (33-months later) was untimely, and in any event, was not properly appealed through the General Counsel's office. Because a prisoner must appeal through all three levels of the administrative remedy process, Flack did not properly exhaust his administrative remedies as it relates to the allegations raised in his complaint. (*Id.*, ¶ 12.) Flack's failure to exhaust his administrative remedies under the PLRA forecloses all of his claims.

(ECF No. 12, PageID.146-47).

Defendant's argument is supported by the Declaration of S. Allison-Love, who is "the Consolidated Legal Center (CLC) Attorney for the Federal Bureau of Prisons (BOP),

at the Federal Correctional Institution in Milan, Michigan." (ECF No. 12-1).  Allison-Love

avers that Flack did not file any grievances when he was housed at FDC Milan, and indeed,

did not file any grievances at all between 2021 and 2023.  (*Id.*, PageID.150-52, 158).  More

significantly, Allison-Love avers that Flack "submitted only 2 [BP-9] remedies regarding

any medical issues," and that both of those were submitted the summer of 2024, on July

22nd and August 16th, respectively.  (*Id.*, PageID.153).

> The first version of Flack's grievance is as follows:

> > On 9-6-2023, I had a cystoprostatectomy at UPMC Shadyside, Pittsburgh, Pennsylvania.  Since a Tort Claim has already been initiated (TRT-NCR-2O24-O4328), including the same medical records here would only be an act of redundancy.  Please contact me if there is a need for any pertinent information.  As far as this Administrative Remedy is concerned, I have a series of questions for the staff members involved at Milan as well as Loretto, that I would like completely and thoroughly answered.[6]

(ECF No. 12-1, PageID.164).

In his second submission, which he "returned [] to staff" on July 29, 2024, Flack

added that "[o]n 7-18-2024, I found out that I had developed a 'hydrocele'" and "can't be

sure whether or not this emerged due to the cystoprostatectomy I had on 9-6-2023 or one

of the previous resections prior to that surgery." (ECF No. 12-1, PageID.162; ECF No. 32,

PageID.433).  Therefore, he has "a series of questions… for those who performed the

---

[6] The grievance continues, "[d]ue to the length, there is a continuation page attached to this form." (ECF No. 12-1, PageID.162).  Although the Court does not have the original attached page, the Court does have the page attached to the second submission (ECF No. 12-1, PageID.163), which is identified in the response to the second submission as "basically the exact same attachment, except for the last few entries asking if the onset of a hydrocele is related to the previous issues you raised." (*Id.*, PageID.160).

11

aforementioned tasks." (*Id.*).[7]

The BOP considered these two submissions by Flack to be duplicates of one another. (*Id.*, PageID.160). The BOP gave them both the numerical identifier 1206621 and added suffixes -1 and -2 to identify each. (*Id.*). Flack was told that both versions of the grievance were untimely because the latest conduct grieved therein was in September of 2023, though the response to his second grievance does address the hydrocele issue. (*Id.*, PageID.159-60). As noted above, in its instant motion for summary judgment, Defendant essentially adopts the same timeliness argument.

The problem with Defendant's argument is that it ignores nuances that apply when a prisoner is grieving care he received for an ongoing chronic medical condition – particularly one that worsens over time – as opposed to an acute medical condition. As the Court explained in *Ellis v. Vadlamudi*, 568 F. Supp. 2d 778 (E.D. Mich. 2008):

> For an acute medical condition, like a heart attack or a diabetic coma, the time of the failure to treat (and therefore the time of the Eighth Amendment violation) can be determined with some precision, and therefore the time limit for filing a grievance can be readily established. Such is not the case for a chronic medical condition that is ignored, or for which treatment is delayed or inadequate. The seriousness of a chronic condition may not become obvious to prison officials until some time passes, and the indifference to that condition—and the resulting pain suffered by the prisoner that equates to the infliction of punishment—may not become manifest until then as well. Such a condition is properly identified as "ongoing," and a grievance that identifies the persistent failure to address that condition must be considered timely as long as the prison officials retain the power to do something about it.

---

[7] The hydrocele complaint is not contained in the "Administrative Remedy Request" form, but in the "Administrative Remedy Informal Resolution Form." (ECF No. 12-1, PageID.162).

*Ellis*, 568 F. Supp. 2d at 783-84. *See also Dunbar v. Huyge*, No. 1:18-CV-1355, 2020 WL 6599041, at *6 (W.D. Mich. June 3, 2020), *report and recommendation adopted*, No. 1:18-CV-1355, 2020 WL 5249274 (W.D. Mich. Sept. 3, 2020) ("when a prisoner's grievance concerns lack of medical care for a chronic medical condition that the prisoner identifies as 'ongoing,' the purposes of exhaustion will have been satisfied so long as the prisoner has provided prison officials sufficient information to address the issue.").

The allegations in Flack's complaint appear to express concern about a chronic condition that worsened over time due to allegedly delayed and/or inadequate medical care. His allegations begin in 2021 when he "noticed a blood/clot while [] having a bowel movement." (ECF No. 1, PageID.23). He alleges that as time progressed, he developed a large tumor in his bladder, endured multiple surgeries, and lost his urinary bladder and prostate. (*Id.*, PageID.22-26). He claims his "G.I. Tract is compromised and has to wear adult diapers." (*Id.*, PageID.29). Flack also notes that on September 6, 2023, he underwent a cystoprostatectomy. (*Id.*, PageID.25). Flack also alleges that he "found out [on] July 18, 2024, that he has a hydrocele and is uncertain whether or not it was caused by any of the previous surgeries." (*Id.*, PageID.26). He also claims that he was "verbally abused" by a particular staff member, though he does not elaborate. (*Id.*, PageID.25).[8] Finally, Flack contends that certain of his medical records were "hidden from plain view and the obfuscation of the Tort Claim's Administrative Remedy Process." (*Id.*).

Flack does not seem to dispute that he did not file any grievances prior to the two

---

[8] Flack contends that the details are "spelled out" in "Exhibit 'C'" to his Tort Claim filing, though it does not appear to be in the record. (*Id.*).

13

2024 grievances referenced by Allison-Love.  However, his allegations arguably suggest that although the medical care he complains of occurred principally between 2021 and 2023, the seriousness of his condition did not become apparent to him until later, including, potentially, when he received the hydrocele diagnosis on July 18, 2024.  Thus, depending on Flack's specific allegations about how his conditions developed over time, his grievances could be considered timely, at least in part; again, "a grievance that identifies the persistent failure to address that condition must be considered timely as long as the prison officials retain the power to do something about it."  *Ellis*, 568 F.Supp. 2d at 784.[9]

---

[9] Importantly, this is not to suggest that Flack's ability to recover on his FTCA claim can reach all the way back to the first instance of alleged medical malpractice in 2021 or 2022.  As explained in *Redmond v. United States*, 194 F. Supp. 3d 606, 621 (E.D. Mich. 2016):

> The Federal Tort Claims Act (FTCA) states that "[t]he United States shall be liable, respecting the provisions of this title relating to tort claims, in the same manner and to the same extent as a private individual under like circumstances, but shall not be liable for interest prior to judgment or for punitive damages." 28 U.S.C. § 2674. "The FTCA bars a tort claim against the United States unless first presented to the appropriate federal agency 'within two years after such claim accrues.'" *Amburgey v. United States*, 733 F.3d 633, 636 (6th Cir.2013) (citing *United States v. Kubrick*, 444 U.S. 111, 113, 100 S.Ct. 352, 62 L.Ed.2d 259 (1979); quoting 28 U.S.C. § 2401(b)).
>
> "Although the FTCA does not define when a claim 'accrues,' the Supreme Court has held that a plaintiff's medical-malpractice claim accrues when he 'knows both the existence and the cause of his injury.'" *Ibid.* (quoting *Kubrick*, 444 U.S. at 113, 100 S.Ct. 352). The plaintiff's claim for malpractice accrues therefore when he is "in possession of the critical facts that he has been hurt and who has inflicted the injury." *Kubrick*, 444 U.S. at 122, 100 S.Ct. 352.  The Sixth Circuit "has recognized, however, that in 'medical-malpractice cases in which the plaintiff has little reason to suspect anything other than natural causes for his injury, a plaintiff might need to know, or have reason to know, of doctor-caused harm (though not necessarily *negligently* doctor-caused harm) in order for his claim to accrue.'" *Amburgey*, 733 F.3d at 637 (quoting *Hertz v. United States*, 560 F.3d 616, 619 (6th Cir.2009)).

*Redmond*, 194 F. Supp. 3d at 621.

Thus, even if Flack timely exhausted his FTCA claim to some degree – for instance, if he did not

14

As Defendant noted in its reply brief, however, Flack "include[d] additional facts in his response brief that were not pled in the Complaint." (ECF No. 30, PageID.410). Thus, Defendant requests that, "[i]f this matter continues as an FTCA case, [Flack] should be directed to file an amended complaint, clearly setting forth the factual allegations underlying his FTCA claim, so that the [Defendant] can properly respond." (*Id.*). The Court agrees. First, the majority of Flack's original complaint was devoted to allegations in support of the *Bivens* claims he has now asked to withdraw. The case will benefit from having a complaint that focuses on the sole remaining claim, rather than ones that have been withdrawn. Second, Flack's response includes a litany of factual assertions, many of which appear to either add to, or clarify allegations contained in his original complaint. (ECF No. 27, PageID.240-52). Finally, Flack's complaint references certain documents that are not in the present record, which may have pertinent information to his claims. (*See, e.g.*, ECF No. 1, PageID.22 (referencing contents of an "affidavit" Flack allegedly filed "in the Tort Claim"), 25 (same)). Again, the Court finds that the case will benefit from a single complaint that clearly delineates the facts that comprise Flack's FTCA claim, and the contours of the claim itself, and attaches any documents whose details Flack wishes to incorporate by reference. Indeed, the filing of such an amended complaint may help frame the issues discussed above about exhaustion, claim accrual, and the statute of limitations.

---

develop the hydrocele until July 2024, he could not possibly have exhausted a claim related to that specific issue prior to that date – the issues of when that claim accrued, the extent to which the statute of limitations cabins that claim, and therefore, "precisely how far [he] can reach back in seeking to prove liability and estimate damages," *Ellis*, 568 F.Supp. 2d at 786, are all separate issues to be fleshed out later in the case.

15

Finally, the Court recognizes that Defendant made a separate argument about whether, even if timeliness were not an issue, Flack properly exhausted his remedies regarding the two requests he filed in July of 2024.  (ECF No. 12, PageID.147) ("[T]he grievance that [Flack] submitted at FCI Loretto in July 2024 (33-months later) was untimely, and in any event, was not properly appealed through the General Counsel's office.").  However, Defendant's brief was fairly cursory as to this argument, and in Flack's sur-reply, he provides a detailed, but somewhat difficult-to-follow, discussion which he characterizes as "explain[ing] how his Administrative Remedies were made unavailable."  (ECF No. 32, PageID.426-428).

Given that the issue of exhaustion is an affirmative defense on which Defendant bears the burden of proof, *Does 8-10*, 945 F.3d at 961, and in light of the Court's above analyses, the most prudent course is for Defendant to address all of the aforementioned exhaustion issues in a renewed motion for summary judgment (assuming it deems filing one to be appropriate) after Flack files his amended complaint.  Accordingly, Flack should be given 30 days to file an amended complaint, and Defendant's motion for summary judgment should be denied without prejudice.

## III. CONCLUSION

For the foregoing reasons, **IT IS RECOMMENDED** that Flack's *Bivens* claims be **DISMISSED**, Flack be **ORDERED** to file an amended complaint within 30 days, and Defendant's Motion to Dismiss and for Summary Judgment **(ECF No. 12)** be **DENIED WITHOUT PREJUDICE**.

Dated: March 5, 2026                                  s/David R. Grand
Ann Arbor, Michigan                                   DAVID R. GRAND
                                                      United States Magistrate Judge

## NOTICE TO THE PARTIES REGARDING OBJECTIONS

Within 14 days after being served with a copy of this Report and Recommendation, any party may serve and file specific written objections to the proposed findings and recommendations and the order set forth above. *See* 28 U.S.C. §636(b)(1); Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d)(1). Failure to timely file objections constitutes a waiver of any further right of appeal. *See Thomas v. Arn*, 474 U.S. 140, (1985); *United States v. Sullivan,* 431 F.3d 976, 984 (6th Cir. 2005). Only specific objections to this Report and Recommendation will be preserved for the Court's appellate review; raising some objections but not others will not preserve all objections a party may have. *See Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987); *see also Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596-97 (6th Cir. 2006). Copies of any objections must be served upon the Magistrate Judge. *See* E.D. Mich. LR 72.1(d)(2).

A party may respond to another party's objections within 14 days after being served with a copy. *See* Fed. R. Civ. P. 72(b)(2); 28 U.S.C. §636(b)(1). Any such response should be concise, and should address specifically, and in the same order raised, each issue presented in the objections.

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on March 5,

17

2026.

s/Eddrey O. Butts
EDDREY O. BUTTS
Case Manager